## Commonwealth *v*. Morris Half Hour Laundromat, Appellant.

Argued January 11, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

reargument refused May 21, 1971.

*Lewis H. Markowitz,* with him *Markowitz, Kagen & Griffith,* for appellant.

*Edward T. Baker,* Deputy Attorney General, with him *Fred Speaker,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 22, 1971:

At issue in this appeal is the nature and scope of the duty of an owner of a coin-operated laundromat to

remit taxes to the Commonwealth under the provisions of the Tax Act of 1963 for Education, Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 P.S. §3403-1 et seq.

Appellant Charles D. Morris, an individual trading and doing business under the name of Morris Half Hour Laundromat, owns and operates a chain of self-service coin-operated laundromats in and around Harrisburg, Pennsylvania. The laundromats are unattended in the normal course of business, and appellant visits them only periodically to check upon their cleanliness and to empty the coin boxes. The only significant difference between each of appellant's laundromats concerns the capacity and cost per use of the washing machines. Thus, for example, one location contains ten 8-pound washers with a 25¢ coin slot and two 16-pound washers with a 50¢ coin slot, whereas another location has sixteen single load washers with a 35¢ coin slot, four double load washers with a 50¢ coin slot, and two 30-pound washers with a 75¢ coin slot.

On or about March 16, 1966, an audit of appellant's business was conducted by the Department of Revenue, and on May 10, 1966, he was notified that he owed the Commonwealth for the calendar years 1963 through 1965 additional sales tax in the amount of $2,613.90 and additional use tax in the amount of $374.92, plus interest. Appellant prosecuted unsuccessful administrative appeals before the Sales Tax Board and the Board of Finance and Revenue and thereafter appealed to the Court of Common Pleas of Dauphin County sitting as the Commonwealth Court. On July 9, 1969, that court filed an opinion and order sustaining the Commonwealth's position in all respects. Appellant filed exceptions which were dismissed, and this appeal followed.

In this Court appellant asserts that he does not render a taxable service within the purview of the Tax

Act of 1963 for Education; that the method of assessment employed by the Department of Revenue did not comply with the provisions of the Act; that the Board's method of assessment violated the uniformity clause of the Pennsylvania Constitution and the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution; and that the Commonwealth is barred from asserting appellant's tax liability by virtue of its prior collection and present assessment of a sales and use tax upon various equipment, parts, repairs, supplies, and utilities purchased by appellant in connection with the operation of his laundromats. We shall discuss each of these contentions in turn.

## I. Applicability of the Tax Act of 1963

Section 201(a) of the Tax Act of 1963 for Education, 72 P.S. §3403-201(a), imposes a tax upon "each separate sale at retail as defined herein", and Section 2(j)(4) of the Act, 72 P.S. §3403-2(j)(4) defines "sale at retail" as follows: "(4) *The rendition for a consideration of the service of* repairing, altering, mending, pressing, fitting, dyeing, *laundering, drycleaning or cleaning tangible personal property* or applying or installing tangible personal property as a repair or replacement part of other personal property for a consideration, *whether or not the services are performed directly or by means of coin-operated equipment or by any other means,* and whether or not any tangible personal property is transferred in conjunction therewith, except such services as are rendered in the construction, reconstruction, remodeling, repair or maintenance of real estate. . . ." (Emphasis added.)

The Commonwealth contends and we agree that appellant's business falls squarely within this statutory definition. By making washing machines available to

the public appellant performs for a consideration the services of "laundering . . . tangible personal property."

Appellant seeks to distinguish Section 2(j)(4) by asserting that the term "service" in common and ordinary usage denotes work or labor done for another. Since neither he nor any agent of his *personally* performs any work for the laundromat customers, it is argued that he performs no taxable "service" for those customers. However, given the prevalence of today's machine technology, it is doubtful that the present ordinary meaning of the term "service" is restricted to manual service, and in light of the comprehensive scheme of taxation provided by the Tax Act of 1963 for Education we will not infer that the Legislature intended such a restrictive meaning. Appellant does indeed work for his customers—through his machines, and Section 2(j)(4) expressly contemplates as much by providing broadly that laundry services are taxable "whether or not . . . performed directly or by means of coin-operated equipment or by any other means . . ."

Appellant additionally claims that an examination of the legislative history and of the historical necessity that led to the enactment of the present version of Section 2(j)(4) demonstrates that the Legislature intended to tax only attended coin-operated laundries. However, "[w]hen the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Statutory Construction Act, Act of May 28, 1937, P. L. 1019, art. IV, §51, 46 P.S. §551; see also *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A. 2d 277 (1965). The Legislature has here clearly provided that services of the sort offered by appellant are taxable.

## II. Statutory Method of Assessment

Although Section 201 of the Act, 72 P.S. §3403-201, imposes a single flat percentage rate of taxation upon

"each separate sale at retail", Section 202, 72 P.S. §3403-202, sets forth a bracket schedule whereby "[t]he amount of tax imposed by section 201 . . . shall be computed". Thus in the last audit year, 1965, Section 201 imposed a flat rate of 5% and Section 202 provided as follows: ". . . (a) If the purchase price is ten cents (10¢) or less, no tax shall be collected. (b) If the purchase price is eleven cents (11¢) or more but less than twenty-one cents (21¢), one cent (1¢) shall be collected. (c) If the purchase price is twenty-one cents (21¢) or more but less than forty-one cents (41¢), two cents (2¢) shall be collected. (d) If the purchase price is forty-one cents (41¢) or more but less than sixty-one cents (61¢), three cents (3¢) shall be collected. (e) If the purchase price is sixty-one cents (61¢) or more but less than eighty-one cents (81¢), four cents (4¢) shall be collected. (e.1) If the purchase price is eighty-one cents (81¢) or more but less than one dollar and one cent ($1.01) five cents (5¢) shall be collected. (f) If the purchase price is more than one dollar ($1.00), five (5) per centum of each dollar of purchase price plus the above bracket charges upon any fractional part of a dollar in excess of even dollars shall be collected."

It is readily apparent from an examination of this bracket schedule that the *effective* rate of payment on sales at retail of less than a dollar is higher than the actual basic rate imposed by Section 201. This discrepancy is made necessary by virtue of the fact that there is no way for the Commonwealth to collect a fraction of a cent. Thus, for example, in 1965 the basic tax rate was 5%. Five percent of a 25¢ sale is 1.25¢. The only practical way for the Commonwealth to receive 5% of a 25¢ sale is to adopt a bracket schedule that requires the payment of 2¢ on a sale for such an amount.

During the audit period appellant effectively ignored the bracket schedule. For each tax reporting pe-

riod during the three years in question and depending upon the then prevailing basic tax rate contained in Section 201, appellant remitted to the Commonwealth 4% or 5% of the gross receipts derived from the washing machines at each of his laundromats. This was clearly wrong. The Act imposes a tax upon each "separate" sale at retail, and appellant's computations necessarily assume, contrary to fact, that the entire gross receipts from one laundromat reflect a single sale at retail or, alternatively, that all separate sales at each location in each tax reporting period were in even dollar amounts.

Thus faced with the task of reconstructing the total amount that appellant should have remitted, the Department of Revenue auditor began with the basic assumption that each single use of one washing machine constituted one separate sale at retail. Thereafter, it was necessary for him to determine the frequency of use of each of appellant's washing machines in each location. For example, during the portion of the audit period when the basic tax rate was 5%, the auditor determined that one of appellant's laundromats contained washing machines with coin boxes in denominations of 25¢, 35¢ 50¢, and $1.00. Under the bracket schedule then in effect designed to ensure the Commonwealth 5% of the purchase prices of all separate sales at retail, a 25¢ machine required the collection and remittance of 2¢ or 8%; a 35¢ machine, 2¢ or 5.714%; a 50¢ machine, 3¢ or 6%; and a $1.00 machine, 5¢ or 5%. By calculating the frequency of use of each machine, the auditor was able to compute the total amount due from that particular laundromat. This procedure was repeated at each of the appellant's laundromats. The total of the sums so computed represents the total amount that appellant should have collected and remitted during the audit period, and the balance remaining after deducting the amount actually remitted by

appellant represents the sales tax assessment here at issue.

In contending that the assessment levied by the Department of Revenue did not comply with the provisions of the Act, appellant does not dispute the accuracy of the auditor's data or mathematical calculations. His sole complaint is rather that the auditor erred in concluding that each single use of one washing machine constituted one separate sale at retail within the meaning of the Act. In appellant's view, a customer's purchase in a single visit of three 25¢ washing cycles represents one separate sale for a purchase price of 75¢. This becomes significant due to the fact that the total tax due on one 75¢ sale is less than that due on three 25¢ sales.

However, we do not believe that the auditor acted unreasonably in equating a single use of one washing machine with one single sale. The depositing of money in the coin box of a washing machine seems persuasively analogous to the ringing up of one sale on a cash register. Furthermore, as appellant's chosen method of operation precluded his recording the number of washing cycles purchased by each of his customers in a single visit, he should not be heard to complain of the auditor's single use theory.

Moreover, even assuming that appellant's multiple use theory is correct, it would not follow that the assessment is erroneous. A taxpayer seeking review of an assessment has the burden of proving the assessment to be incorrect. Tax Act of 1963 for Education, Act of March 6, 1956, P. L. (1955) 1228, §545, as amended, 72 P.S. §3403-545. Appellant has not met this burden. Under the auditor's theory, no tax was imposed upon the revenues obtained from appellant's coin-operated dryers or soap dispensing machines because the charge for those machines did not exceed 10¢ and the bracket schedule then in effect exempted from taxation all sales

of 10¢ or less. Appellant's theory by contrast suggests that all purchases made at a single visit represent one inseparable sale at retail. That being so, the cost of using the dryers and soap dispensing machines would be included in the total purchase price of each separate sale. The present record is devoid of any evidence that the total tax due under a single visit theory including the dryer and soap revenues would be any less than that found due under the auditor's single use theory which excluded those revenues.

### III.  Constitutionality of Assessment

Because of the Act's bracket schedule, it is most unlikely that any two laundromats would necessarily have to remit the same percentage of gross revenues to the Commonwealth. Thus, for example, under the auditing procedure employed in the instant case, the proprietor of a coin-operated laundromat containing only 25¢ machines will always be required to collect and remit a greater amount of tax than the owner of a similar enterprise containing only 50¢ machines and doing the same dollar volume of business. Appellant claims that this is an arbitrary discrimination between businesses in violation of the uniformity clause of the Pennsylvania Constitution and the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution. More specifically, he argues that the tax statute's bracket schedule effects an illegal graduated sales tax. Cf. *Kelley v. Kalodner,* 320 Pa. 180, 181 Atl. 598 (1935). We do not agree with either contention.

Neither the Commonwealth, the tax collector nor the consumer can escape the fact that the federal government has provided that 1¢ shall be the smallest unit of currency in our national monetary system. What the bracket schedule does in effect is to round off the tax

due from any particular sale at retail to the next higher full cent; it is thus the only practicable way in which the Commonwealth can ensure that it receives the basic tax rate. That being so, the bracket schedule's classification of separate sales at retail in terms of purchase price is certainly reasonable.

## IV.   The Use Tax Assessment

The validity of the Department of Revenue's use tax assessment is not directly challenged in this appeal. Appellant does, however, argue that the Commonwealth's past collection and present assessment of a use tax upon the purchase of various equipment, parts, repairs and supplies used in connection with his laundromats bar the Commonwealth from imposing a sales tax upon the coin-operated laundry services purchased by his customers. Appellant has not referred us to any provision of the Act containing such an exception, and we know of no authority that suggests that this mode of taxation violates the uniformity clause.

The judgment of the Court of Common Pleas of Dauphin County is affirmed.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.